### LUCY A. CALDWELL *v.* THOMAS A. SNOW AND JOHN MCLEAN.

It is only after the lessor has been called on, and his refusal or neglect to make repairs, that the
lessee has authority to make them, and if, before such call, the repairs are negligently made by an
*employé* of the lessee, the lessee is liable for damages.  C. C. 2663, 2664.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J.
*W. D. Hennen*, for plaintiff and appellant.

Arts. 2663, 2686, declare that the lessor is bound to make repairs, such as
were necessary to be made in this case. The lessor cannot fulfill this obligation

if the lessee do not notify him of the necessity, as the former knows nothing of the condition of the premises. Accordingly art. 2664 makes it the duty of the lessee to notify the lessor—to call upon him to make them. The counsel for defendants says, at page 8 of his brief, that the words of the law are, *may* call, not *shall* call, and *may* cause, not *shall* cause, the repairs to be made. And that, therefore, the lessor is under no obligation to notify the lessee, and that if he chooses to make the repairs without first calling upon the lessor, he only incurs the penalty of paying the costs of them himself. *Qui hæret in literâ, hæret in cortice.* Let us look at the law more closely. The article in question declares that "*if* he (the lessor) *refuse or neglect* to make them, the lessee may himself cause them to be made." etc. Thus, then, according to the very words of the law—and it is the words which the defendants invoke—the lessee may cause the repairs to be made, *only, however, on one condition,* to wit; *if the lessor refuse or neglect to make them.* As, therefore, the lessor cannot refuse or neglect to make the repairs, until called upon to do so, it follows that the lessee who makes them without first calling upon his lessor, not only incurs the penalty of losing their cost, but he is also acting in violation of his contract—is in default—and what he does, he does at his own risk. Arts. 2691, 2151, 1906, 2445, 2216. So the proprietors will take upon themselves the risk of skill when they select the persons to do the work for which they have contracted with the undertakers. *LeDuff* v. *Porche,* 5 An. 148. It is a wise provision of law which requires the landlord to be notified before the tenant is permitted to make repairs. The owners of houses would soon be ruined if it were permitted to every tenant to make such repairs as his fancy or caprice might dictate, without notifying the owner of the property of his intentions. *Shall* v. *Banks,* 8 R. 171. Besides, as we have already intimated, the lessor cannot fulfill his obligation to keep the premises in a proper condition, unless informed by the lessee of the necessity of those occasional repairs of which the latter is alone cognizant. There is yet another reason which bears directly upon the circumstances of the present case. If the lessor be notified, he will then select workmen in whose skill and careful vigilance he can confide; he will choose agents whose character and responsibility are personally known to him, and the instinct of preservation will secure the employment of accountable and competent men. But of the exercise of this right *Mrs. Caldwell* has, by the illegal act of the defendants, been deprived. They chose one of their own workmen; a man without means, and unable to repair the mischief his gross negligence has caused. Now the duty of the defendants to notify *Mrs. Caldwell* was equivalent to an express stipulation to that effect, inserted in the contract; such stipulation being implied by law from the nature of the agreement. Art. 1757. And the violation of this duty was thus a violation of a stipulation of the contract. "Pour que le conducteur soit tenu de la perte ou de la détérioration de la chose louée, il n'est pas précisément nécessaire que ce soit sa faute qui ait proprement causé le dommage, il suffit qu'elle y ait donné occasion. * * * Ainsi s'il lui est défendu par le bail d'avoir aucune matière combustible dans aucun endroit, et qu'il y en ait eu, il sera tenu de l'incendie, quoique arrivé par cas fortuit; car c'est sa contravention aux clauses du bail, et par conséquent sa faute qui y a donné occasion. *Si in locatione convenit, ignem ne habeto, et habuit, tenebitur, etiamsi fortuitus casus admisit incendium.* L. 11, s. 1, ff. locat.

"Par la même raison si j'ai été attaqué en chemin par des voleurs qui ont tué le cheval que j'avais pris à loyer pour faire mon voyage, quoique cette violence, qui a causé la perte du cheval, soit une force majeur, dont le locataire n'est pas responsable, et que j'aie la preuve de cette violence par la capture des voleurs qui ont été pris peu après, néanmoins, si j'ai donné par ma faute occasion à cette accident en faisant route à des heures indues, ou en quittant le grand chemin pour en prendre un plus court mais beaucoup moins sur, je serai responsable de la perte du cheval." Pothier, *Louage,* No. 194.

So in this case, the defendants violated a stipulation of their contract; that violation gave occasion to the fire, "et par conséquent, c'est sa faute qui y a donné occasion." *Qui occasionem praestat damnum fecisse videtur.* L. 30, s. 30, D. ad leg. Aquil.

Our law upon the responsibilities of lessees is taken from the Roman law through the medium of the French. Let us refer to these sources. Pothier, *Louage,* No. 193, says: "Le locataire est tenu par rapport à la conservation

CALDWELL
*v.*
SNOW ET AL.

de la chose qui lui a été louée, non seulement de sa propre faute, mais de celle de ces domestiques, c'est à dire, de sa femme, de ses enfans, de ses serviteurs et servantes, *des ouvriers qu'il fait travailler chez lui, &c.*"

Duranton, vol. 17, No. 103, commenting on art. 1735 Napoleon Code, from which art. 2692 of our Code is taken almost verbatim, says, "Et par *personnes de sa maison* l'on entend non seulement sa femme, ses enfans, les parens qu'il a reçus chez lui et ses domestiques des deux sexes, mais encore ses pensionnaires, ses hôtes, *les ouvriers qu'il fait travailler*, &c.*"

Pothier, No, 194, loc. cit., says again in reference to accidents by fire :—
" Comme les incendies arrivent ordinairement par la faute des personnes qui demeurent dans les maisons, lorsqu'une maison est incendiée, l'incendie est facilement présumé arrivé par la faute du locataire ou par celle de ces domestiques, desquels nous venons de dire qu'il est responsable."

This presumption of the Roman law, "*incendium fit plerumque culpâ inhabitantium*," L. 3, D. De officio præf. vigil; L. 11, D. De peric et commod. rei vendit. was incorporated into the old French law, and is formally sanctioned by the Code Napoleon, art. 1733, which imposes upon the lessee the burden of proving that the fire had occurred without fault upon his part. The reasons adduced for the adoption of this principle, are founded upon the most salutary wisdom.    " Ces règles sont sages, *conservatrices de la propriété à laquelle le bailleur n'a aucun moyen de veiller ;* ces règles sont le gage le plus assuré de l'exactitude du preneur, du soin qu'il doit apporter dans l'usage de son droit ; de la surveillance qu'il doit exercer sur sa famille, et sur ses serviteurs.    Au reste, la loi n'établit qu'une présomption.    Cette présomption peut être détruite par une preuve contraire ; *mais la présomption devait être établie contre le preneur, parceque, d'une part le bailleur n'a aucun moyen se prévenir ni d'éviter l'accident, et que de l'autre les incendies arrivent ordinairement par la faute de ceux qui habitent la maison.*" Troplong, *Louage,* tome 2, p. 187. No. 364. Compare Duranton, tome 17, No. 104. Pothier, *Louage,* No. 193, ad finem. We would particularly call the attention of the Court to the authority of Troplong, who, No. 363, 365, has discussed this question with masterly ability, and has shown, as we think, unanswerably, that so far from being rigorous or exceptional in its character, the article of the French Code is in strict accordance with the analogies of law, and the provisions of the same Code upon kindred subjects, whilst in its conservatory regard for property and the public welfare, it exhibits a profound sagacity.  Notwithstanding these reasons—notwithstanding the clear principle, that the lessee is a debtor and bound to restore the thing in the same condition in which he received it ; arts. 2689, 2690, 2697— notwithstanding the equally clear principle, that the debtor must prove the facts which exonerate him from the performance of his obligation ; arts. 2229, 2151, 2216—notwithstanding the rule of evidence which requires the plaintiff in all cases, to prove his allegations before he can recover ; and the defendants are plaintiffs in reconvention here—and notwithstanding that other rule of evidence, which places the burden of proof upon him who has to support his case by proof of a fact of which he is supposed to be most cognizant, our own Code, art. 2693, has, and as it appears to us, most unwisely, departed from the Roman and French law, and imposed upon the lessor the burden of proving that the fire arose from the fault of the lessee, or that of his family.  In view of the reasons we have given, we submit that the Court should place this burden upon the lessor as lightly as may be, and that it it should construe the article of our Code, not rigorously, but with a liberal regard to those considerations which prompted the adoption of a different rule in the French law, and which seem to us more consonant with reason and a sound public policy.  The Judge, *a quo,* we respectfully insist, has erred greatly in the other extreme ; with fastidious niceness he would exact from us, who are the defendants in reconvention, an accuracy and fullness of proof that would scarcely be required from the plaintiffs in any action ; and he thought it our duty to make clearer a fact which, it seems to us, has been established beyond all reasonable doubt ; a fact, which we had no notice from the pleadings, or otherwise, that we should be required to show, until the moment of trial ; and a fact, which we were not bound to prove, if the other views we have presented upon the testimony of *Fairchilds* be correct.

The principle and authorities invoked by the defendants' counsel, pp. 6, 7, of his brief, have nothing to do with the question presented by the circumstances

of this case. If defendants had no right to employ *Little*, they are liable for his acts. "The attorney is answerable for the person substituted by him to manage in his stead, if the procuration did not empower him to substitute; " Art. 2176. In the cases cited by the counsel, a *tacit* authority was given to one person to employ another exercising an independent calling.

*Livingston*, for defendant:

The Articles of the Civil Code having a bearing upon this case, are these: 2691—" The lessor is only liable for the injuries and losses sustained through his own fault;" 2698—" He can only be liable for the destruction occasioned by fire when it is proved that the same has happened, either by his own fault or neglect, or by that of his family."

Article 2663 requires the lessor to deliver the thing in good condition. He ought to make, during the continuance of the lease, all the repairs which may *accidentally* become necessary.

Article 2664 says: " If the lessor do not make the necessary repairs, the lessee *may* call on him to do it. If he refuse or neglect to make them, the lessee may cause them to be made." Article 2693 : " A lessee is liable for his own acts of carelessness and for those of his servants." Domat, 470, says : " He who takes the thing to hire, is bound, not only for his own act, but likewise for the act of the person for whom he ought to be responsible ; but if a tenant of a house has put in a tenant under him, or if he has kept servants in it, and by their carelessness have set the house on fire, the lessee is also accountable for the damage which may be occasioned by other faults, which any careful and diligent man would not readily fall into ; but if, without his fault, the thing perishes, or is damaged by some accident, he is not bound to make it good. Domat, 469, Cushing's Edition.

Our law is the same, see Articles 2691 and. 2693. Two questions now arise from the facts in this case :

*First.* Was *Little*, the copper-smith, (the one who was employed by defendants to repair the gutters,) the servant of defendants ? and

*Second.* If not the servant, did defendants use that care which a prudent man would use ?

*Little* was a copper-smith by trade, and had the character of being a good and careful workman ? He exercised a *particular* trade, an *independent employment.* Broom, in his Legal Maxims, 533, Respondeat Superior, after stating the liability of a master for the acts of his servants, says : " A difficulty, however, often arises in applying this general and fundamental rule to the particular facts of the case, and in determining between what parties the relationship of master and servant actually subsists; for although the party will usually be liable with whom the act complained of ultimately originates, yet the applicability of this fails in one case, for where he who does the injury exercises an *independent* employment, the party employing him is clearly not liable ; as in the instance of a butcher who employs a driver whose deputy does the mischief by his careless driving, or of a builder, who contracts to make entire alterations in a club-house, together with the necessary gas-fittings, and who employs the gas-fitter for the latter purpose under a sub-contract, through the negligence of whom the plaintiff sustains an injury. In these cases the relation of master and servant does not subsist between the principal and the person who occasions the injury, and the former is, therefore, not liable for the misconduct of the latter. See case 12, *Adolph & Ellis*, 743, 40th vol. Com. Law Reports, 179 ; 6, *Meeson & Welsby*, 499 ; 9th, *Meeson & Welsby*, 709 ; *Quarman* v. *Burnett.*

Dunlap's Paley's Agency, 296 ; Lord Abinger, in commenting on the case where the injury was occasioned by the gas-fitter, says the injury was occasioned by *Bland*, who did not stand in the relation of servant to the defendant, but was merely a sub-contractor with him, and to him the plaintiff must look for redress.

I think the true principle of law, consistent with common sense, was laid down in *Quarman* v. *Burnett*, in which all previous cases on this subject were cited and considered. Park B. observed : " The plaintiff has his remedy against *Bland*, whose negligence was the cause of the injury ; if he attempts to go farther, and to fix defendant, it can only be on the ground of *Bland's* being the servant of defendant; but then, the obvious answer is, that *Bland* was only a sub-contractor to do certain work, and the relation of master and servant did not subsist between him and the defendants.

CALDWELL
v.
SNOW ET AL.

Now, in the present case before the Court, it is evident that *Little*, the cop-per-smith, employed to repair the gutters, was not the servant of defendants— he exercised an independent calling—was skillful in his trade, and was just such a person as the plaintiff or any prudent person would have employed to do the same work.   The Articles 2691 and 2693 of the Civil Code cannot apply to this case.

But, if the defendant had not called on plaintiff to repair the gutters, they would not be liable, for Article 2664 only contemplates that the lessor should pay the cost of repairs when he refuses, after being notified.   He must be put in default.

The Article 2664 says the lessee *may* call, not shall call, and *may* cause, not shall cause, the repairs to be made.   But if the lessee, of his own will, under-takes to repair what should be repaired by the lessor, the only penalty is that he must pay the cost of repairs.   If the person employed to do the repairs is skillful or competent, and uses the same precautions that he or any one in his trade use, then the lessor is not liable, because he did what a prudent man would do, and because, further, he made such repairs only as the lessor should make.   See 5 A. 713, *Hennen* v. *Hayden;*  5 A. 760, *Haynes* v. *Second Munici-pality ;*  1 A. 13, *Baldwin* v. *Bank of Louisiana ;*  17 La. R. 560, *Hyde* v. *Plan-ters' Bank ;*  5 A. 177, *Joor* v. *Sullivan;*  2 R. 294, *Frazier* v. *New Orleans Gas Light Co.*

SLIDELL, C. J.   We are satisfied from the evidence that the fire occurred from the negligence of the workman employed by the defendants to repair a gutter on the roof of the house leased.

We are also of opinion that it was the duty of the lessees to call on the lessor to make the repairs for which the workman was employed, and that the lessees had no right to cause them to be made without such previous call, and the re-fusal or neglect of the lessor to make them.   This seems to us the just conclu-sion from Articles 2663 and 2664 of the Code.   We consider these provisions of law as wise in themselves, and involving an important right in favor of the landlord, which the lessee should not violate.   Owners of houses might be serious sufferers, if it were permitted to tenants to make such repairs as their wishes might dictate, without notice to the owner.   Moreover, if the lessor be notified he will then have an opportunity to select workmen in whose skill and carefulness he is willing to confide, and make his own bargain.

There being a duty resulting from the nature of the contract to give such notice, the defendants have acted in violation of it.   It is in this violation of duty they have given occasion to the fire, and the fault of the workman whom they employed must be considered their fault, and they must answer for it.

We had some difference of opinion as to another item of the reconventional demand, namely, the claim made by the defendant for $150, being the amount expended for a new floor, but a majority of the Judges are of opinion that it should be allowed, and deducted from the rent note, upon which suit is brought.

It is, therefore, decreed that the judgment of the District Court be reversed, and that the plaintiff recover from the defendants, *Thomas A. Snow* and *John McLean*, in *solido*, the sum of four hundred dollars, (being the amount of the note, less the sum of one hundred and fifty dollars, allowed to the defendants for laying a new floor,) with two dollars and fifty cents, cost of protest, and interest on four hundred dollars from 23d October, 1852, and costs in both Courts, and that upon the residue of the reconventional demand of the defend-ants, there be judgment in favor of the plaintiff.